UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

RONALD WOLFE,

       Plaintiff,         Civil Action No.: 14-11397
                             Honorable Terrence G. Berg
       v.                  Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 11, 14]

    Plaintiff Ronald Wolfe appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Although not argued by Wolfe, the Court finds clear error in the Administrative Law Judge's ("ALJ") failure to evaluate the medical opinion of Wolfe's treating psychiatrist, preventing this Court from conducting meaningful appellate review. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 14]** be **DENIED**;

- Wolfe's motion **[R. 11]** be **GRANTED** in part to the extent it seeks remand, but **DENIED** in its remainder; and,

- the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Claimant's Background and Claimed Disabilities

Wolfe was a 55-year-old high school graduate who had worked for twenty-three years as an automotive machine operator before he was diagnosed and surgically treated for prostate cancer. [R. 8-5, Tr. 121; R. 8-6, Tr. 169-70]. He was subsequently moved to another job at his employer, and laid off shortly thereafter. [R. 8-2, Tr. 40-42; R. 8-6, Tr. 169]. Wolfe claims disability due to prostate cancer and symptoms related to depression and anxiety. [R. 8-6, Tr. 168].

### B. Procedural History

Wolfe filed an application for DIB, alleging disability as of October 31, 2011. [R. 8-5, Tr. 121-22]. The claim was denied initially and Wolfe filed a timely request for an administrative hearing, which was held on September 6, 2013, at which both he and a vocational expert ("VE") testified. [R. 8-2, Tr. 32-55; R. 8-4, Tr. 68-82]. In an October 23, 2013 written decision, the

ALJ found Wolfe not disabled. [R. 8-2, Tr. 10-25]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review. [R. 8-2, Tr. 1-5]. Wolfe timely filed for judicial review of the final decision. [R. 1].

### C.     The ALJ's Application of the Disability Framework

DIB is available for those who have a "disability." See *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.*

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

3

Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential process, the ALJ concluded that Wolfe was not disabled. At step one, he found that Wolfe had not engaged in substantial gainful activity since his alleged onset date. [R. 8-2, Tr. 15]. At step two, the ALJ identified severe impairments of prostate cancer in remission, depression and anxiety. [*Id.*]. At step three, the ALJ determined that none of Wolfe's conditions, either alone or in combination, met or medically equaled a listed impairment, specifically considering Listings 12.04 (Affective disorders), 12.06 (Anxiety-related disorders) and 13.24 (Prostate gland – carcinoma). [*Id.*, Tr. 15-16]. In making this

determination, the ALJ found that Wolfe's mental impairments resulted in mild restriction in activities of daily living, moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation. [*Id.*, Tr. 16].

Next the ALJ assessed Wolfe's residual functional capacity ("RFC"), finding him capable of the full range of medium work, except that Wolfe could perform only "simple routine tasks on a sustained basis and [could] maintain sufficient attention and concentration for simple tasks with regular breaks." [*Id.*, Tr. 17]. At step four, the ALJ determined that Wolfe's RFC prevented him from returning to his past relevant work. [*Id.*, Tr. 21]. At step five, with the assistance of VE testimony, the ALJ concluded that a hypothetical claimant matching Wolfe's profile could perform a significant number of jobs in the national economy, such that he was not disabled, including motor vehicle assembler (20,000 jobs in the region), industrial cleaner (14,000 jobs) or sales routes (delivery drivers and helpers) (4,800 jobs). [*Id.*, Tr. 21-22, 52-53].

## II.    STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r*

of Soc. Sec._, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  _Rogers v. Comm'r of Soc. Sec._, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  _Bass v. McMahon_, 499 F.3d 506, 513 (6th Cir. 2007).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  _Cutlip v. Sec'y of Health & Human Servs._, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

  The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards.  "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings."  _Gentry_, 741 F.3d at 723.  _See also Rogers_, 486 F.3d at 249.  In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in

the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Wolfe is not disabled is not supported by substantial evidence.

## III.   ANALYSIS

### A.   Wolfe's Motion

To begin, the Court notes the insufficiency of Wolfe's motion.

7

Although he argues against the ALJ's credibility finding, three of the four pages under that argument heading are dedicated solely to recitation of black letter law, with his only argument being a conclusion that the ALJ failed to comport with the regulations and failed to contain specific reasons for his credibility finding. [R. 11, PgID 759-63]. He argues that his "medical records are replete with complaints *consistently* corroborating her [sic] physicians' findings with regard to his disorders." [*Id.*, PgID 761 (emphasis in original]. Yet, he does not bother to cite any of the record in support.

Wolfe's description of the ALJ's decision is inaccurate, inasmuch as he devoted several paragraphs discussing four different reasons for finding Wolfe less than fully credible. [R. 8-2, Tr. 19-20]. Moreover, Wolfe's lack of development results in waiver of this argument. *McPhereson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks and citation omitted). This Court has not obligation to scour the record on Wolfe's behalf. *Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 754 (6th Cir. 2011). Having said that, Wolfe's credibility will require reevaluation on remand in light of this Court's ultimate finding.

Wolfe's other argument, that the Court should remand to consider

8

new evidence under Sentence Six of the Act is mooted by the fact that the Court *sua sponte* identifies a clear error in the ALJ's decision, to wit, his failure to evaluate the medical opinion of Wolfe's treating psychiatrist. *See Little v. Soc. Sec.*, 2014 U.S. Dist. LEXIS 105537, at * 27 n.3 (E.D. Mich. June 23, 2014) (noting that party's failure to raise an argument does not prevent court from finding *sua sponte* that grounds for reversal exist) *adopted by* 2014 U.S. Dist. LEXIS 104488, 2014 WL 3778213 (E.D. Mich. July 31, 2014).

### B. Treating Physician Opinion

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits

"meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).  The Court will "not hesitate to remand" when an ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue,* 661 F.3d 931, 939 (6th Cir. 2011) (internal quotation marks and citation omitted).

    Here, the ALJ erroneously stated that "the medical evidence contains neither medical source statements nor functional assessments from the claimant's treatment providers."  [R. 8-2, Tr. 20].  Quite to the contrary, on July 24, 2012, Wolfe's treating psychiatrist Priyamvada Nagesh, M.D., completed a mental RFC form for the State of Michigan, finding Wolfe moderately limited in his ability to remember locations and work-like procedures, understand, remember and carry out simple instructions, maintain concentration for extended periods, sustain an ordinary work routine, work in coordination with others, make simple decisions, complete a normal work day without interference of psychological symptoms, accept instruction and respond appropriately to criticism, and set realistic goals or make plans independently.  [R. 8-10, Tr. 500-501].  He further found Wolfe markedly limited in his ability to respond appropriately to changes in the

10

work setting, and understand, remember and carry out detailed instructions. [*Id.*].

The ALJ's error in overlooking this opinion is not harmless. "[A] violation of the good reasons rule can be deemed to be harmless error if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (internal quotation marks and citation omitted). None of these exceptions exists here.

First, only one of the numerous limitations Dr. Nagesh imposes on Wolfe are not encompassed in the ALJ's RFC, which only restricts Wolfe's ability to perform complex tasks. [R. 8-2, Tr. 17]; *c.f. Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (failure to refer to treating physician opinion harmless error where ALJ clearly considered report and included some findings in RFC). The ALJ specifically stated that his RFC was based in part on the findings of the reviewing psychologist Rom Kriauciunas, Ph.D., who did not have the benefit of Dr. Nagesh's opinion or the year-worth of mental health treatment records that followed it. [R. 8-2,

11

Tr. 20; R. 8-3, Tr. 59-64].

Second, although Dr. Nagesh does not specifically cite to his treatment records as supporting his opinion [R. 8-10, Tr. 500], and although his opinion was issued shortly after he began treating Wolfe [R. 8-7, Tr. 297-302], the record as a whole (including Dr. Nagesh's subsequent treatment records) lends enough support to his opinion that the Court cannot find it "so patently deficient that the Commissioner could not possibly credit it." *Cole*, 661 F.3d at 940; *c.f. Heston*, 245 F.3d at 536 (omission harmless error where treating physician opinion was outdated and unsupported).

Dr. Nagesh began treating Wolfe in mid-July 2012, diagnosing him with a mood disorder, bipolar disorder, dysthymic disorder, panic disorder without agoraphobia, and avoidant personality disorder and issuing him a global assessment of functioning ("GAF") score of 45.[3]  [R. 8-7, Tr. 297-302; R. 8-10, Tr. 497-99]. Dr. Nagesh issued his opinion approximately a

---

[3] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below.  Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).  Scores in the range of 61-70 indicate some mild symptoms.  *Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 745 (6th Cir. 2011).

12

week later. [R. 8-10, Tr. 500-501]. However, his subsequent treatment records, while showing Wolfe improved somewhat with treatment, also demonstrate that Wolfe continued to struggle with his depression and anxiety despite this treatment. For example, over the year of treatment, Wolfe consistently reported depression, mood swings, difficulty concentrating, social anxiety and avoidance of social situations. [R. 8-7, Tr. 272, 278, 282, 286, 292, 294, 306, 311, 315-16; R. 8-9, Tr. 411, 415, 417, 422, 426, 432, 436, 440, 446, 456, 464, 473; R. 8-12, Tr. 622, 631, 639, 657, 660, 665, 669, 671, 690]. He frequently presented as dysthymic or anxious, with either a congruent or restricted affect. [R. 8-7, Tr. 272, 277, 285, 291, 293, 303, 310, 330; R. 8-9, Tr. 410, 414, 416, 421, 425, 431, 435, 439, 445, 449, 451, 455, 463, 467, 472; R. 8-10, Tr. 527; R. 8-12, Tr. 618, 622, 631, 662, 664, 666, 668, 678, 680, 684, 687, 691].

Wolfe's long-time girlfriend consistently accompanied him to appointments and was often documented as speaking for him. [R. 8-7, Tr. 286, 310; R. 8-9, Tr. 417, 429, 443, 449, 459, 468, 470; R. 8-12, Tr. 627, 631, 656-58, 660, 666, 669, 672, 678-79, 684, 686, 691]. She also reported that Wolfe occasionally rocked or talked to himself out loud when nervous, and sometimes had angry outbursts for no reason. [R. 8-9, Tr. 417, 468; R. 8-12, Tr. 635].

Wolfe was re-diagnosed several times between July 2012 and June 2013, most recently being diagnosed with major depressive disorder, mood disorder, generalized anxiety disorder and social phobia. [R. 8-12, Tr. 621, 625, 630, 634, 638, 641]. Dr. Nagesh consistently issued him GAF scores of 45 during the relevant period and made several medication changes, the last being in May 2013, which could indicate that Wolfe's condition was not yet considered stable. [*Id.*].

Dr. Nagesh's opinion is further corroborated by consultant examiner Craig Brown Ed.D.'s May 2012 evaluation, which diagnosed Wolfe with dysthymic disorder, generalized anxiety disorder, panic disorder without agoraphobia, and alcohol dependence in remission, rule out attention deficit hyperactivity disorder and a mathematics disorder. [R. 8-9, Tr. 481; R. 8-10, Tr. 535]. Dr. Brown issued Wolfe a GAF score of 50 and a "poor" prognosis, and found him unable to manage money. [R. 8-9, Tr. 482].

Finally, the Court cannot say that the ALJ "met the goal of §1527(d)(2) where it is clear from the ALJ's opinion that he completely missed Dr. Nagesh's opinion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 750 (6th Cir. 2007) (invoking harmless error exception where ALJ failed to address treating opinion would create exception that would swallow rule and should not be allowed).

14

Overall, because the ALJ overlooked entirely Dr. Nagesh's treating opinion, which is generally consistent with the record evidence, the ALJ committed clear error requiring remand, despite Wolfe's failure to argue as much. On remand, the ALJ is free to consider any additional evidence Wolfe submits in support of his claim for disability, including material he submitted to the Appeals Council.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Wolfe's Motion for Summary Judgment **[R. 11]** be **GRANTED** in part to the extent it requests remand, but **DENIED** in part in its remainder, the Commissioner's Motion **[R. 14]** be **DENIED** and this case be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

> s/Elizabeth A. Stafford
> ELIZABETH A. STAFFORD
> United States Magistrate Judge

Dated: July 31, 2015


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service

15

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

    Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
